UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re GOVERNMENT'S APPLICATION TO ENJOIN PLAINTIFFS IN ERBACCI, et al.

v.

UNITED STATES, et al., 95 C. 3171, from Prosecuting that Case in any Court or Forum other than this Court.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Jan. 19, 1996.

Mary Jo White, United States Attorney for the Southern District of New York, Brooklyn, NY (Karen B. Konigsberg, Assistant United States Attorney, New York City, of counsel), for the United States.

Judith A. Scott, General Counsel, International Brotherhood of Teamsters, Washington, DC, for defendant.

## OPINION & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by United States of America against the International Brotherhood of Teamsters ("the IBT" or "the Union") and the IBT's General Executive Board. This settlement was embodied in the voluntary consent order entered March 14, 1989 ("the Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provi-

sions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for International Union Office. In the second phase of the Consent Decree, the Independent Administrator was replaced by a three-member Independent Review Board ("the IRB").

During its six-year history, the Consent Decree has spawned a tremendous amount of litigation that has required this Court to issue numerous opinions. In one of those opinions, pursuant to this Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), this Court enjoined all "all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3; *see also* January 17, 1990, Opinion & Order, 728 F.Supp. 1032 (S.D.N.Y.) ("All Writs Act Decision"), *modification denied,* 735 F.Supp. 502 (S.D.N.Y.), *aff'd,* 907 F.2d 277 (2d.Cir.1990).

In the instant motion, brought pursuant to this Court's All Writs Act Decision, the Government seeks to enjoin plaintiffs in *Erbacci, et al. v. United States, et al.,* 95 C. 3171 (N.D.Ill.) ("*Erbacci*"), which is an action filed in the United States District Court for the Northern District of Illinois, Eastern Division, from pursuing that action in any court or forum in any jurisdiction except this Court.

*BACKGROUND*

The *Erbacci* plaintiffs ("plaintiffs")[1] are two individuals, one law firm, and one insurance company that provided legal representation and insurance services to IBT Locals 738, 726, and 727. (*Erbacci, et al. v. United States, et. al.,* 95 C. 3171 (N.D.Ill.), Complaint ("Complaint") ¶¶ 1–3, 17–21.) Plaintiff Anthony G. Erbacci ("Erbacci") "is a citizen of the State of Illinois [and] is licensed to practice law in the State of Illinois." *Id.* ¶ 2. Plaintiff Jack P. Cerone ("Cerone") is a citizen of Illinois and is an attorney licensed to practice in Illinois. *Id.* ¶ 3. Cerone also "is the sole proprietor of and does business as Marble Insurance Agency." *Id.* Plaintiff Erbacci, Cerone, and Moriarty is a law firm that is the successor-in-interest to Erbacci, Syracuse & Cerone, Ltd, which was a law firm—apparently organized as a limited partnership—in which both Erbacci and Cerone were shareholders. *Id.* ¶¶ 1–3. Plaintiff Marble Insurance Agency is the insurance agency owned and operated by plaintiff Cerone. *Id.* ¶ 3. The *Erbacci* defendants ("defendants")[2] are: (1) the United States of America ("the Government"); (2) the IBT; (3) Charles M. Carberry ("Carberry"), who is the Investigations Officer under the Consent Decree; (4) Frederick B. Lacey ("Lacey"), who is a member of the IRB; (5) IBT Joint Council 25; (6) IBT Local 738; (7) IBT Local 726; and (8) IBT Local 727. *Id.* ¶¶ 4–11.

Plaintiffs contend that they previously provided legal and insurance services to IBT Locals 738, 726, and 727 ("the Locals"). Plaintiffs assert that they provided legal services to Local 738, "including organizing efforts and day-to-day business." *Id.* ¶ 17. Plaintiffs claim that they also provided legal services to Local 726, including "negotiations with several municipalities." *Id.* ¶ 18. Plaintiffs assert that Cerone sold insurance to IBT Local 727.

---

**1.** Although the Government was the plaintiff in *United States v. International Bhd. of Teamsters, et al.,* 88 Civ. 4486, in the interests of clarity, this Court refers to the plaintiffs in *Erbacci, et al. v. United States, et al.,* 95 C. 3171 (N.D.Ill.) as "plaintiffs" in the instant application.

**2.** Once again, in the interest of clarity, this Court refers to the *Erbacci* defendants as "defendants," despite the fact that some of the *Erbacci* defendants were not defendants in *United States v. International Bhd. of Teamsters, et al.,* 88 Civ. 4486.

Plaintiffs contend that defendants improperly interfered with plaintiffs business relationships with Locals 738, 726, and 727. Plaintiffs assert that defendants informed Locals 738 and 727 that plaintiffs had ties with organized crime. *Id.* ¶¶ 32–41. Plaintiffs state that in January 1986, Cerone's father "was convicted of conspiracy to promote racketeering enterprise [sic], and interstate fraud or communication in aid of racketeering, and has been identified as a member of La Cosa Nostra." *Id.* ¶ 24. Plaintiffs claim that Carberry "initiated an investigation regarding plaintiff Jack P. Cerone and informed Defendant [IBT] Local 738 and others regarding this investigation." *Id.* ¶ 32. Plaintiffs assert that the IBT wrote to Local 738, stating that Cerone was associated with organized crime. *Id.* ¶ 34. Plaintiffs further contend that FBI Supervisory Special Agent Duncan J. Wainwright wrote a letter to the IBT, stating that the IBT's "contacts with Jack P. Cerone violated the Consent Decree." *Id.* ¶ 37. Plaintiffs state that on June 30, 1993, Local 738 wrote a letter to plaintiffs, terminating their services "due to the 'unresolved allegations' concerning plaintiff Jack P. Cerone." *Id.* ¶ 39. Likewise, plaintiffs claim that on July 1, 1993, "Local 727 sent a letter to plaintiff Marble Insurance Agency severing the insurance business relationship between Plaintiff Marble Insurance Agency and Defendant ... Local 727." *Id.* ¶ 40. Moreover, plaintiffs assert that at an unspecified time in July 1993, "Local 726 severed its attorney-client relationship with Plaintiffs Erbacci, Syracuse & Cerone, Ltd., Anthony G. Erbacci and Jack P. Cerone due to the allegations against Plaintiff Jack P. Cerone." *Id.* ¶ 41.

Plaintiffs claim that defendants improperly failed to provide plaintiffs with "the opportunity to respond [to] or answer the allegations" and that defendants improperly failed to provide plaintiffs with a hearing. *Id.* In "Count I" of their complaint, plaintiffs allege that defendants' actions violated plaintiffs' rights of free association, guaranteed by the First Amendment to the United States Constitution. *Id.* ¶¶ 43–46. Plaintiffs further allege that defendants' actions violated plaintiffs' right to substantive and procedural due process and their right to confront their accusers, as guaranteed, respectively, by the Fifth and Sixth Amendments to the United States Constitution. *Id.* ¶¶ 47–48. As a remedy for these alleged constitutional violations, plaintiffs seek a temporary and permanent injunction, enjoining defendants from violating plaintiffs' constitutional rights, enjoining defendants "from interfering with ... Plaintiffs' contracts, business relationships and prospective relationships", and enjoining defendants "from applying the terms of the Consent Decree to Plaintiffs." *Id.* ¶ 56.

In "Count II" of their complaint, plaintiffs reiterate the alleged constitutional violations discussed in "Count I." *Id.* at 20.[3] As a remedy for these alleged constitutional violations, plaintiffs seek $249,750 in damages. *Id.* at 22.

In "Count III" of their complaint, plaintiffs again reiterate the alleged constitutional violations discussed in "Count I." *Id.* at 23. As a remedy for these alleged violations, plaintiffs seek a declaratory judgment that: (1) defendants violated plaintiffs' First Amendment rights; (2) defendants violated plaintiffs' Fifth Amendment rights; (3) defendants violated plaintiffs' Sixth Amendment rights; (4) it is unconstitutional to apply the Consent Decree to non-members of the IBT; (5) the Consent Decree cannot be enforced against non-members of the IBT; (6) "the United States of America cannot use the terms of the Consent Decree to control the actions of [the IBT] and its Local as they relate to [non-members of the IBT]"; (7) the Government, the IBT, Carberry, Lacey, and Joint Counsel 25 tortiously interfered with plaintiffs "contracts, business relationships and prospective relationships." *Id.* at 27–28.

After the plaintiffs brought suit in the United States District Court for the Northern District of Illinois, Eastern Division, the Government brought the instant application, seeking to enjoin the plaintiffs from bringing the *Erbacci* litigation in any court or forum

---

**3.** This Court cites to the page number of plaintiffs' complaint, instead of the paragraph number, because plaintiffs misnumbered the paragraphs of their complaint that follow paragraph 56.

in any jurisdiction except this Court. The Government asserts that "[o]n the face of the complaint, it is plain that the *Erbacci* Action directly implicates the [Consent Decree]." (Memorandum of Law in Support of Government's Motion for Injunctive Relief ("Government's Memo") at 1.) Plaintiffs filed a memorandum in opposition to the Government's motion, and plaintiffs' counsel in Illinois have moved this Court to admit them to practice *pro hoc vice.*

## *DISCUSSION*

This Court retains exclusive jurisdiction over matters arising under the Consent Decree. *See* Consent Decree, ¶¶ A.1, K.16. Pursuant to an application by the Government, on December 15, 1989, this Court issued an Order requiring "any and all [IBT] local unions, joint councils, and area conferences affiliated with the IBT" to appear before this Court and show cause:

> why this Court should not enter an Order, pursuant to the All Writs Act, 28 U.S.C. § 1651, and this Court's inherent equity powers, ... enjoining all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]

December 15, 1989, Order at 3. This Order also temporarily enjoined all IBT "local unions, joint councils, area conferences and other entities affiliated with the IBT ... from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent [Decree]." *Id.* at 4. After reviewing the 70 briefs that were submitted on behalf of 282 IBT Locals, 20 IBT Joint Councils, and two state conferences, *see* January 17, 1990, Opinion & Order, 728 F.Supp. at 1040, this Court issued

an Opinion and Order. *Id.* In that Opinion and Order, this Court granted the "Government's request for a permanent injunction pursuant to the All Writs Act," *id.* at 1058, thereby "enjoining all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3.

In the All Writs Act Decision, this Court cited three reasons why such actions must be brought before this Court. "First, there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments." 728 F.Supp. at 1047. Such inconsistent interpretations of the Consent Decree "would encourage forum shopping by subordinate entities seeking a sympathetic ruling." *Id.* Second, "widespread litigation across the country would subvert the reform by bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation." *Id.* "Third, judicial economy demands that similar issues not be litigated multiple times in different districts...." *Id.* at 1048.

The Government claims that the *Erbacci* litigation implicates the Consent Decree in several ways. The Government asserts that the plaintiffs' action for a declaratory judgment implicates the Consent Decree because plaintiffs seek a declaration that "(1) the Consent Decree is unconstitutional as applied to them, (2) the Consent Decree should not be interpreted to apply to them, and (3) the Government may not use the Consent Decree to control IBT affiliates' relationship[s] with plaintiffs." (Government's Memo at 2.) The Government further argues that the *Erbacci* litigation implicates the Consent Decree because plaintiffs "allege that the actions of the court-appointed officers violated their constitutional rights," and plaintiffs name Carberry and Lacy as defendants. *Id.* Thus, the Gov-

ernment asserts that this Court's All Writs Act Decision extends to the *Erbacci* litigation because that litigation seeks to challenge the constitutionality of the Consent Decree, the scope of the Consent Decree, and the propriety of actions taken by officers appointed pursuant to the Consent Decree. *Id.* at 7. The Government further argues that even if the All Writs Act Decision does not enjoin plaintiffs from bringing the *Erbacci* litigation in any forum other than this Court, this Court should issue a new injunction pursuant to the All Writs Act. *Id.* at 9–12. The Government contends that the concerns that prompted this Court to issue the All Writs Decision are implicated in the *Erbacci* litigation, and therefore, pursuant to the All Writs Act, this Court should issue an Order enjoining plaintiffs from pursuing the *Erbacci* litigation in any forum other than this Court.

Plaintiffs challenge the Government's application on several grounds. First, plaintiffs claim that this Court lacks personal jurisdiction over plaintiffs. (Plaintiffs' Memorandum in Opposition to Governments' Motion for Injunctive Relief ("Plaintiffs' Memo") at 2.) Second, plaintiffs contend that this Court's All Writs Act Decision does not apply to plaintiffs because they were not parties to the Consent Decree. *Id.* at 6–7. Third, plaintiffs argue that this Court's All Writs Act Decision does not apply to plaintiffs because that decision fails to comply with Federal Rule ("Rule") of Civil Procedure 65. *Id.* at 6. Fourth, plaintiffs contend that application of this Court's All Writs Act Decision to plaintiffs would violate due process of law. *Id.* at 7–10. Fifth, plaintiffs assert that this Court lacks a basis for issuing a new order pursuant to the All Writs Act in the instant case. *Id.* at 10–12.

### 1. The Erbacci Litigation Must Be Enjoined Pursuant to This

#### Court's All Writs Act Decision

■ This Court finds that plaintiffs must be enjoined from pursuing the *Erbacci* litigation in any court or forum other than this Court because the *Erbacci* litigation falls squarely within the four corners of this Court's All Writs Act Decision. As previously discussed, this Court permanently en-joined "any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from ... any act of any of the court officers appointed by this Court pursuant to the Consent Order ... in any court or forum in any jurisdiction except this Court[.]" Order, December 15, 1989; *see also* January 17, 1990, Opinion and Order, 728 F.Supp. at 1058 (granting Government's request for permanent injunction). In the instant case, as attorneys for two IBT locals and as an insurance agent for one IBT local, plaintiffs are both representatives and agents of IBT affiliated entities.

Moreover, the *Erbacci* litigation clearly "challenges, impedes, [and] seeks review of [and] relief from" the actions of officers appointed pursuant to the Consent Decree. Plaintiffs seek review of and relief from actions of the IRB and the Investigations Officer by suing defendants for injunctive relief and $249,750 in damages. The basis of plaintiffs' claim for injunctive relief and money damages is that the Government, the IBT, and the officers appointed pursuant to the Consent Decree acted improperly and violated plaintiffs' constitutional rights. Further, plaintiffs challenge the action of the officers appointed pursuant to the Consent Decree. As previously discussed, plaintiffs seek a declaration that: (1) defendants violated plaintiffs' constitutional rights; (2) the Consent Decree cannot be enforced against non-members of the IBT; (3) "the United States of America cannot use the terms of the Consent Decree to control the actions of [the IBT] and its Local as they relate to [non-members of the IBT]"; (4) the Government, the IBT, Carberry, Lacey, and Joint Counsel 25 tortiously interfered with plaintiffs' "contracts, business relationships and prospective relationships." (Complaint at 27–28.) These assertions directly challenge the actions of Carberry and the IRB, and plaintiffs seek review of and relief from actions taken by Carberry and the IRB. Moreover, the *Erbacci* litigation might impede the actions of the officers appointed pursuant to the Consent Decree because plaintiffs seek to recover almost a quarter million dollars in damages from

these officers for actions that the officers took under color of the authority granted to them by the Consent Decree.

As previously stated, this Court found that its All Writs Act Decision was required for three reasons, and each of these reasons favors enjoining plaintiffs. "First, there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments." *Id.* at 1047. In the instant case, plaintiffs not only seek review of certain actions taken by defendants, but plaintiffs seek a declaration that the Consent Decree cannot be enforced against non-members of the IBT and that "the United States of America cannot use the terms of the Consent Decree to control the actions of [the IBT] and its Local as they relate to [non-members of the IBT]." (Complaint at 27.) Regardless of the merits of plaintiffs' argument, plaintiffs seek a broad declaration that will define the scope of the Consent Decree, and will review the propriety of actions taken by the Investigations Officer and the IRB. For the Investigations Officer and the IRB to function effectively, it is imperative that a single set of cohesive rulings defines such fundamental issues as the scope of the Consent Decree and the propriety of actions taken by officers appointed pursuant to the Consent Decree. If multiple courts throughout the nation rule on these issues, there is substantial risk that the Consent Decree will be subject to inconsistent interpretations and the officers appointed pursuant to the Consent Decree may face inconsistent judgments.

Second, "widespread litigation across the country would subvert the reform by bogging the Court Officers down in duplicative, harassing, and perhaps frivolous litigation." 728 F.Supp. at 1047. If plaintiffs proceed with the *Erbacci* litigation in the Northern District of Illinois, both Investigations Officer Carberry and IRB Member Lacey may face prolonged litigation in that district. The travel and time required to defend the *Erbacci* litigation in Illinois would hinder their ability to perform their respective functions under the Consent Decree. Moreover, given the vast amount of litigation the Consent Decree has spawned, the *Erbacci* litigation raises the possibility that future litigants may seek to bring actions that challenge the scope or constitutionality of the Consent Decree against Carberry or the IRB in forums other than this Court. Such actions could impede Carberry and the IRB from effectively performing their respective functions by bogging them down in multiple suits brought throughout the country.

Third, this Court's All Writs Act Decision was designed to promote judicial economy, and judicial economy is best served by enjoining plaintiffs. The *Erbacci* litigation directly concerns several issues that are central to the Consent Decree. Because this Court has overseen the Consent Decree from its inception, this Court has a thorough knowledge of the myriad decisions that make up the law of this case, and this knowledge enables this Court to resolve disputes concerning the Consent Decree efficiently.

Although plaintiffs argue that this Court's All Writs Act Decision does not apply to plaintiffs for several reasons, each of plaintiffs' arguments is meritless. Each of plaintiffs' arguments will be examined in turn.

First, plaintiffs claim that this Court cannot enjoin plaintiffs from pursuing the *Erbacci* litigation in a forum other than this Court because this Court lacks personal jurisdiction over plaintiffs. (Plaintiffs' Memo at 2.) Plaintiffs assert that the Government failed to affect proper service on plaintiffs because "[t]he Government did not personally serve the Motion upon any of the *Erbacci* Plaintiffs, but rather served their attorney." *Id.*

Plaintiffs argument is meritless because plaintiffs fail to appreciate the fact that the Government is a defendant to the instant action and therefore is not obligated to obtain jurisdiction over plaintiffs. Indeed, because the Government is on notice that plaintiffs have retained counsel for the *Erbacci* litigation, the Government has an ethical obligation to direct all communications to plaintiffs' counsel and to refrain from communicating directly with plaintiffs.

■ Moreover, this Court properly may exercise jurisdiction over plaintiffs. In upholding this Court's All Writs Act Decision,

the Second Circuit held that "[i]njunctions may be issued against non-parties under the All Writs Act.... [and] the All Writs Act requires no more than that the persons enjoined have the 'minimum contacts' that are constitutionally required under due process." *United States v. International Bhd. of Teamsters*, 907 F.2d 277, 281 (2d Cir.1990) (citation omitted). The Consent Decree resolved a litigation brought pursuant to the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1965(d), and RICO "provides for nationwide personal jurisdiction." November 19, 1991, Opinion and Order, 1991 WL 334242 at *7 (citation omitted). Because of the broad scope of jurisdiction granted under RICO, "[a]ll that is required is sufficient 'minimum contacts' with the United States, not this State or District." *Id.* (citations omitted). In the instant case, plaintiffs have sufficient minimum contacts with the United States to warrant an exercise of this Court's jurisdiction because plaintiffs have brought suit seeking review of the Consent Decree, and seeking a declaration that the Consent Decree is unconstitutional as applied to them. Moreover, plaintiffs have brought suit against the United States, claiming that actions that Government employees took pursuant to the Consent Decree were contrary to law and contrary to the Constitution. In addition, plaintiffs regularly conducted business with three IBT Locals, which are bound by the Consent Decree.

Second, plaintiffs claim that this Court cannot enjoin plaintiffs from pursuing the *Erbacci* litigation in a forum other than this Court because plaintiffs are not parties to the Consent Decree. (Plaintiffs' Memo at 3, 6-7.) Plaintiffs claim that they are not bound by this Court's All Writs Act Decision because "[t]he *Erbacci* plaintiffs are not IBT officers, members or subordinate entities." *Id.* at 3 (citation omitted). Plaintiffs argue that "a judgment or decree among parties to a law suit resolves issues among them, but it does not conclude the rights of strangers to those proceedings." *Id.* (citations omitted). Plaintiffs claim that "the Government is attempting to enforce a consent decree ... against a non-party." *Id.* at 5. Plaintiffs also assert that the injunction that this Court issued pursuant to the All Writs Act "goes to the merits of the case in chief." *Id.* (quotation marks omitted).

■ Plaintiffs' argument is meritless because, as the Government correctly notes in its Reply Memorandum of Law, "[p]laintiffs confuse the issue of whether the Consent Decree is binding on or can be extended to nonparties with the procedural question of whether the Court has the power under the All Writs Act to order all Consent Decree-related litigation to be maintained in this forum." (Reply Memorandum of Law in Support of the Government's Motion for Injunctive Relief ("Government's Reply") at 7.) The Second Circuit has distinguished between cases in which a party seeks to bind a nonparty to the substantive provisions of a consent decree and cases in which a court issues an injunction pursuant to the All Writs Act against a nonparty in order to effectuate a Consent Decree. *See United States v. International Bhd of Teamsters*, 948 F.2d 98, 103 (2d Cir.), *vacated as moot*, 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992) ("*Yellow Freight* "); *see also Association for Retarded Citizens of Connecticut, Inc. v. Thorne*, 30 F.3d 367, 372 (2d Cir.1994), *cert. denied*, — U.S. ——, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995). Although the Second Circuit has held that "the terms of a consent decree cannot be enforced against those who are not parties to the settlement," *Thorne*, 30 F.3d at 372 (citation omitted), the All Writs Act empowers a district court to enjoin actions by a nonparty when necessary to protect the court's jurisdiction over a consent decree. *Id.; Yellow Freight*, 948 F.2d at 103. In fact, in reviewing this Court's All Writs Act Decision, the Second Circuit held that "the All Writs Act authorizes a federal court to protect [its] jurisdiction even though non-parties may be subject to the terms of the injunction." 907 F.2d at 281; *see also In re: Baldwin–United Corp.*, 770 F.2d 328, 338 (2d Cir.1985) ("An important feature of the All–Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction.") (citations omitted).

In the instant case, the Government does not seek a ruling that plaintiffs are bound by the terms of the Consent Decree. Rather, the Government asks this Court to enjoin plaintiffs from pursuing a litigation that implicates the Consent Decree in any forum other than this Court. Thus, the instant application concerns the purely procedural question of in which forum should plaintiffs bring the instant action. As Second Circuit precedent makes clear, this Court may require a nonparty to the Consent Decree to litigate issues that implicate the Consent Decree before this Court. Therefore, plaintiffs' claim is meritless.

Third, plaintiffs claim that Federal Rule of Civil Procedure 65(d) precludes this Court from enjoining plaintiffs pursuant to the All Writs Act. Plaintiffs assert that " '[w]here a statute specifically address [sic] the particular issue at hand, it is that authority, and not the All Writs Act that is controlling." (Plaintiff's Memo at 4 (quoting *Pennsylvania Bureau of Corrections v. United States Marshals Service*, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985).) Plaintiffs argue that the All Writs Act " 'does not authorize [federal courts] to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less appropriate.' " (Plaintiffs' Memo at 4 (quoting 474 U.S. at 43, 106 S.Ct. at 361).) Plaintiffs further assert that Rule 65 establishes the appropriate procedures for enjoining plaintiffs and that "[t]he All Writs Act does not free this Court from the restraints of [Rule] 65." (Plaintiffs' Memo at 4.)

The Second Circuit has flatly rejected a similar Rule 65 argument. In *Baldwin*, 770 F.2d at 339, the Second Circuit stated that "[w]e do not believe that Rule 65 was intended to impose ... a limit on the court's authority provided by the All Writs Act to protect its ability to render a binding judgment." The Second Circuit reasoned that "[i]njunctions issued under the authority of the All–Write Act stem from very different concerns than those motivating ... injunctions governed by [Rule] 65.... [and] [a]bsence of the findings normally required by Rule 65 is not a fatal defect." *Id.* 338–39; *see also Findley v. Laughead*, 27 F.3d 48, 49

(2d Cir.1994). Thus, in fashioning an injunction that is designed to safeguard the Consent Decree, this Court may properly invoke the All Writs Act and is not constrained to follow the requirements of Rule 65.

Fourth, plaintiffs contend that an All Writs Act injunction in the instant case would violate plaintiffs' due-process rights. Plaintiffs contend that "the *Erbacci* plaintiffs were accorded no due process before the Government, and its agents deprived them of their property." (Plaintiffs' Memo at 7.) Plaintiffs assert that "[a]t no time were the *Erbacci* Plaintiffs ... asked to cooperate in the investigation, nor was any hearing ever held." *Id.* Plaintiffs further argue that "[t]he Government and its agents ignored their own rules, designed to ensure due process, before they illegally took the *Erbacci* plaintiffs' property." *Id.* at 7. Plaintiffs conclude that "the complete failure of the Government and its agents to accord the *Erbacci* Plaintiffs any due process prevents this Court from obtaining jurisdiction over them and from applying the All Writs Act or the All Writs Order over [sic] them." *Id.*

Plaintiffs' argument is meritless because, once again, plaintiffs have confused the merits of the instant litigation with the litigation's procedure. The issue of whether the Government and "its agents" denied plaintiffs of their property without due process of law is an issue addressed to the merits of the underlying litigation, which is outside the scope of the instant application. The instant application concerns the issue of whether this Court should issue an injunction regarding the forum in which plaintiffs may litigate the merits of their claims. With regard to this forum-selection issue, plaintiffs have received due-process of law because they have been provided a full and fair opportunity to argue their case before this Court, and indeed, plaintiffs filed papers in opposition to the Government's application. This Court has carefully examined these papers and all the arguments they raise.

Fifth, plaintiffs contend that an All Writs Act injunction in the instant case would violate plaintiffs' due-process rights because plaintiffs are not parties to the Consent Decree. (Plaintiffs' Memo at 9.) Plaintiffs' ar-

gument is no more than a rehash of plaintiffs' earlier argument that this Court cannot enjoin plaintiffs because plaintiffs are not parties to the Consent Decree. For the reasons previously stated, plaintiffs' argument is meritless.

Accordingly, this Court finds that under this Court's All Writs Act Decision, plaintiffs must be enjoined from pursuing the *Erbacci* litigation in any court or forum other than this Court.

### 2. The Erbacci Litigation Must Be Enjoined Pursuant to The All Writs Act

The Government contends that even if the *Erbacci* litigation somehow is outside the scope of this Court's All Writs Act Decision, this Court should issue a new writ pursuant to the All Writs Act, enjoining plaintiffs from pursuing the *Erbacci* litigation in any forum other than this Court. (Government's Memorandum at 9.) The Government argues that "[t]he relief sought by plaintiffs in the *Erbacci* Action clearly implicates the Consent Decree" and that an injunction is necessary to "ensure that the *Erbacci* plaintiffs do not interfere with this Court's jurisdiction or subject the Consent Decree to the risk of inconsistent interpretations." *Id.* at 9–10.

Plaintiffs contend that an All Writs Act injunction would be improper because "[t]here can be no serious contention that the *Erbacci* Plaintiffs are attempting to aid and abet an IBT officer, member or subordinate entity in evading the terms of the Consent Decree." (Plaintiffs' Memo at 10–11.) Plaintiffs further assert that "[t]he *Erbacci* Complaint is clearly fashioned to seek a remedy for the *Erbacci* Plaintiffs acting on their own behalf as attorneys and insurance brokers" and that this complaint "in no way seeks to alter the use of the Consent Decree, as applied to IBT officers, members or subordinate entities." *Id.* at 11.

Under the All Writs Act, "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This statute empowers a federal court "to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). "An important feature of the All–Writs Act is its grant of authority to enjoin and bind nonparties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *Baldwin,* 770 F.2d at 338. In the context of the Consent Decree litigation in *United States v. International Brotherhood of Teamsters,* 88 Civ. 4486, the Second Circuit upheld the injunction that this Court issued pursuant to the All Writs Act because that injunction "serve[d] to effectuate and prevent the frustration of the Consent Decree by consolidating nationwide litigation relating to [the Consent Decree's] meaning and effect." 907 F.2d at 281 (quotation omitted).

In the instant case, even if this Court were to assume *arguendo* that the All Writs Act Decision does not apply to the facts of the instant litigation, an injunction pursuant to the All Writs Act would, nonetheless, be appropriate. An injunction is necessary "to effectuate and prevent the frustration of the Consent Decree" because the *Erbacci* litigation squarely addresses issues that implicate the Consent Decree. As previously discussed in greater detail, the *Erbacci* litigation concerns the scope of the Consent Decree, the constitutionality of the Consent Decree, and the propriety of actions taken by officers appointed pursuant to the Consent Decree. Indeed, the IBT, the Government, Investigations Officer Carberry, and IRB Member Lacey are all defendants in the *Erbacci* litigation.

Moreover, the three concerns that prompted this Court to issue the All Writs Act Decision warrant the issuance an additional All Writs Act injunction in the instant case. As discussed above, the *Erbacci* litigation, creates "a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments." 728 F.Supp. at 1047. In addi-

tion, officers appointed pursuant to the Consent Decree could be forced to spend a substantial amount of time defending the *Erbacci* action in the Northern District of Illinois, thereby hindering their ability to perform their respective functions under the Consent Decree. Further, in view of the vast amount of litigation that the Consent Decree has spawned, the possibility exists that future litigants could bring similar suits in other forums, thereby "bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation." *Id.* Interest of judicial economy also militate in favor of litigating *Erbacci* before this Court, which has handled the Consent Decree litigation since its inception, and which is fully familiar with the extensive law of this case.

Accordingly, this Court finds that plaintiffs should be enjoined under the All Writs Act from pursuing the *Erbacci* litigation in any court or forum other than this Court.

### 3. *Plaintiffs' Attorneys' Motion To Appear Pro Hoc Vice*

Plaintiffs' attorneys Aldo E. Botti, Peter M. DeLongis, and Ronald D. Menna move this Court to admit them to practice *pro hoc vice*.[4] In support of this motion, each of these attorneys submitted an affidavit to this Court, claiming that he is familiar with the United States District Courts for the Southern and Eastern Districts of New York Joint Rules for General, Civil, Criminal, Admiralty and Magistrate Judge Proceedings ("the Local Rules"). The Government has not opposed this motion.

Despite plaintiffs' attorneys' claimed familiarity with the Local Rules, however, the memorandum that plaintiffs' attorneys submitted in opposition to the Government's application violates Local Civil Rule 1(b), which states in relevant part: "All pleadings, motions, and other papers that are submitted for filing must be signed by an attorney of record in said attorney's own name with the name printed or typed directly below the signature and must show the attorney's address, telephone number, the initials of their first and last name, and the last four digits of that social security number." Although Mr. Botti signed plaintiffs' memorandum, he failed to place any of the information required by Local Civil Rule 1(b) "directly below [his] signature," and he entirely failed to include "the initials of [his] first and last name [and] the last four digits of [his] social security number."

Moreover, plaintiffs' attorneys violated Local Civil Rule 1(b) in exactly the same fashion in their respective affidavits in support of their motion to be admitted *pro hoc vice*. In each of these affidavits, the information required by Local Civil Rule 1(b) is not "directly below" the attorney's signature, and in each affidavit, the attorney fails to include "the initials of [his] first and last name [and] the last four digits of [his] social security number."

Plaintiffs' attorneys also violated this Court's Individual Rule 1(b), which states in relevant part: "Courtesy copies of all papers ... should be delivered to chambers on the date of filing." In the instant case, on the date of filing, plaintiffs' attorneys failed to deliver courtesy copies of any of the papers that they filed in opposition to the Government's application or in support of the instant motion to appear *pro hoc vice*. In fact, this Court did not receive copies of any of these papers until Chambers telephoned plaintiffs' attorneys, informing them that they had failed to deliver courtesy copies and asking them to correct this oversight.

In addition, although each of plaintiffs' attorneys swore that he was familiar with the Local Rules, each of these attorneys referred to the Local Rules by the wrong title. In their respective affidavits, plaintiffs' attorneys swore that they "have read and [are] familiar with ... "Rules of the United States District [sic] for the Southern and Eastern Districts of New York." Had any of plaintiffs' attorneys reviewed the title of the rules that he claims to have read and to be familiar with, he would have discovered that these rules are entitled "United States District

---

**4.** Plaintiffs' attorneys' brought this motion "by and through" plaintiffs' local counsel, Martin L. Schmuckler.

Courts for the Southern and Eastern Districts of New York Joint Rules for General, Civil, Criminal, Admiralty and Magistrate Judge Proceedings."

■ Before plaintiffs' attorneys may appear before this Court, this Court must have some reasonable assurance that these attorneys are familiar with the Local Rules and this Court's Individual Rules. Far from demonstrating such familiarity, however, plaintiffs' attorneys have submitted papers that violate these rules. Moreover, in view of these errors, this Court has grave doubts regarding the truthfulness of the statement that each of plaintiffs' attorneys made in his affidavit: "I have read and am familiar with ... Rules of the United States District [sic] for the Southern and Eastern Districts of New York." This Court is particularly troubled by the fact that plaintiffs' attorneys respectively made this representation to this Court "on oath" in sworn affidavits.

■ Because of the flaws in plaintiffs' attorneys' papers, their motion to be admitted *pro hoc vice* should be denied without prejudice. This Court strongly recommends that plaintiffs' attorneys review the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Rules.

## CONCLUSION

For all the foregoing reasons, the Government's motion is GRANTED.

Plaintiffs in *Erbacci, et al. v. United States, et al.,* 95 C. 3171 (N.D.Ill.) are hereby enjoined from pursuing that action in any court or forum in any jurisdiction except this Court. Within ten days of the date that this Opinion and Order is filed, plaintiffs in *Erbacci, et al. v. United States, et al.,* 95 C. 3171 (N.D.Ill.) shall either move to dismiss their action or move to transfer their action to this Court.

Plaintiffs motion to admit Aldo E. Botti, Peter M. DeLongis, and Ronald D. Menna to appear before this Court *pro hoc vice* is DENIED WITHOUT PREJUDICE.

SO ORDERED.