**UNITED STATES of America**
**Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,**
**Defendants.**

**No. 88 Civ. 4486(DNE).**

United States District Court,
S.D. New York.

Oct. 14, 1999.

258

---

## OPINION & ORDER

EDELSTEIN, District Judge.

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia*, the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board ("GEB"). The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has been set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant matter shall be set forth.

In the instant motion, brought pursuant to this Court's decision in *United States v. IBT ("All Writs Order")*, 728 F.Supp. 1032 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir. 1990), the Government seeks to enjoin Daniel D. Slemko ("Slemko"), a member of IBT Local 362 in Calgary, Alberta, Canada, from pursuing a civil action entitled *Slemko v. IBT et al.*, Action No. 9901–12970/1999 (the "Slemko Action"), filed in the Court of Queens Bench of Alberta,

Judicial District of Calgary, in any jurisdiction except this Court.

### BACKGROUND

On February 16, 1999, the Independent Review Board ("IRB") referred an Investigative Report to the IBT proposing disciplinary charges against Slemko. *See* Memorandum of Law in Supp. of Government's Mot. for Injunctive Relief (September 14, 1999)("Government's Mem.") at 5; Declaration of Andrew W. Schilling ("Schilling Decl.") at Ex. C. Specifically, the IRB recommended that the IBT charge Slemko with violating the rules governing the 1996 IBT election ("Election Rules") and bringing reproach upon the IBT by engaging in a scheme to collect, mark, and mail ballots of other IBT members during the 1996 IBT rerun election. *See* Government's Mem. at 5; Schilling Decl. at Ex. C. In a letter dated February 22, 1999, the IBT notified the IRB that the IBT adopted and filed the proposed charges against Slemko. *See* Government's Mem. at 5–6; Schilling Decl. at Ex. D. On April 19, 1999, the General Secretary–Treasurer of the IBT referred the charges against Slemko to Teamsters Joint Council 90 in Calgary ("Joint Council 90") for a hearing. *See* Government's Mem. at 6; Schilling Decl. at Ex. E.

On May 14, 1999, Slemko received notice from Joint Council 90 of the charges pending against him and of a hearing that would be held on June 3, 1999. *See* Schilling Decl. at Ex. F (citing Statement of Claim of Slemko in the Slemko Action). Joint Council 90 informed Slemko on June 2, 1999 that the hearing scheduled for June 3, 1999 had been postponed and that they would notify him of a new hearing date. *See id.* On July 14, 1999, Joint Council 90 advised Slemko that the hearing would be conducted on August 19, 1999. *See id.*

On August 13, 1999, six days prior to the rescheduled hearing, Slemko commenced the Slemko Action, naming the IRB and Election Officer Michael G. Cherkasky ("Election Officer") as defendants. *See* Government's Mem. at 6; Schilling Decl. at Ex. F. Slemko challenges the jurisdiction of Joint Council 90, the IBT, and the IRB to pursue further disciplinary charges against him, alleging that the defendants failed to conclude their disciplinary proceedings within ninety days of the IRB's referral of the proposed charges against Slemko, in contravention of the Consent Decree and the approved Rules and Procedures for the Operation of the IRB ("IRB Rules"). *See* Government's Mem. at 6; Schilling Decl. at Ex. F.; *see also* Consent Decree at ¶ G(e); IRB Rules at ¶ I(6). *Inter alia*, Slemko seeks monetary relief and equitable relief in the form of an order enjoining defendants from pursuing further disciplinary proceedings against him. *See* Government's Mem. at 6; Schilling Decl. at Ex. F. On the same day, August 13, 1999, Slemko also filed a motion in the Canadian court requesting interlocutory injunctions preventing (1) Joint Council 90 from proceeding with the disciplinary hearing against him scheduled for August 19, 1999 and (2) the IBT and the IRB from going forward with any disciplinary measures against him. *See* Governments' Mem. at 7; Schilling Decl. at Ex. H. The disciplinary hearing and the hearing on Slemko's motion were adjourned. *See* Governments' Mem. at 7. On August 16, 1999, the Canadian court ordered all defendants served outside the jurisdiction of the Canadian court to file a "Statement of Defence or a demand of notice" within forty days of service of Slemko's complaint. *See* Government's Mem. at 7; Schilling Decl. at Ex. G.

One week after Slemko filed his lawsuit in Canada, on August 23, 1999, the Government attempted to secure from Slemko a voluntary discontinuance of the Slemko Action. *See* Government's Mem. at 7;Schilling Decl. at Ex. J. The Government wrote Slemko's attorney, advising him that Slemko's initiation and continued prosecution of the Slemko Action violated the All Writs Order and requesting that Slemko

discontinue the suit immediately. *See* Government's Mem. at 7; Schilling Decl. at Ex. J. The letter also informed Slemko's counsel that if Slemko did not withdraw his suit by August 30, 1999, the Government would seek an order from this Court enjoining Slemko from continuing with the action. *See* Government's Mem. at 7–8; Shilling Decl. at Ex. J.

On August 31, 1999, Slemko's counsel advised the Government that Slemko had not withdrawn his suit. *See* Schilling Decl. at ¶ 18. In a letter dated September 1, 1999, the Government informed Slemko's attorney that because Slemko did not withdraw the Slemko Action by August 30, 1999 and because there was no indication that Slemko would discontinue his action in the immediate future, the Government intended to seek equitable relief from this Court. *See* Government's Mem. at 8; Schilling Decl. at Ex. K. In that letter, the Government also asked that Slemko's counsel advise the Government if Slemko's position changed. *See* Government's Mem. at 8; Schilling Decl. at Ex. K. To date, neither Slemko nor his attorney has contacted the Government stating an intention to withdraw the Slemko Action.

Thus, because Slemko ignored the Government's repeated requests to discontinue the Slemko Action voluntarily, on September 14, 1999 the Government filed a motion asking this Court to enjoin Slemko from prosecuting the Slemko Action in any court or forum other than this Court and directing Slemko to withdraw that action immediately pursuant to the *All Writs Order*, the All Writs Act, 28 U.S.C. § 1651, and this Court's inherent equity powers. Slemko never filed opposition papers with this Court, and in fact, his attorney informed this Court on October 4, 1999, by letter via facsimile, that Slemko "must let this application by the United States of America go by default." Letter from G. Neil McDermid to Judge David N. Edelstein of 4/4/99.

## Discussion

Slemko's filing of his action in Canada violates the All Writs Order. Furthermore, this Court has jurisdiction over Slemko to enforce the All Writs Order against him.

### A. The All Writs Order

■ It is well settled that under the Consent Decree and the All Writs Act, this Court may enjoin all IBT members and affiliates from "filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of the court officers appointed by this Court pursuant to the Consent Order ... in any court or forum in any jurisdiction except this Court." *All Writs Order*, 728 F.Supp. at 1039 n. 5. This Court has emphasized that all actions implicating the Consent Decree must be brought in this Court because (1) multiple suits would present a "significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments" that would "encourage forum shopping," (2) "widespread litigation ... would subvert the reform by bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation," and (3) "judicial economy demands that similar issues not be litigated multiple times in different districts." *All Writs Order*, 728 F.Supp. at 1047–48.

The Slemko Action implicates the All Writs Order and, thus, Slemko must re-file his action with this Court. First, the Slemko Action creates a risk of inconsistent judgments. Slemko maintains that Joint Council 90, the IBT, and the IRB "lost jurisdiction" to pursue disciplinary measures against him when they failed to make written findings setting forth the specific action taken and the reasons for that action within ninety days of the IRB's referral of charges. *See* Government's Mem. at 6; Schilling Decl. at Ex. F.; *see also* Consent Decree at ¶ G(e); *accord* IRB Rules at ¶ I(6). With regard to any questions concerning the responsibilities

and authority of the Court Officers, this Court has stated that "[i]n order to allow the Court Officers to function properly and continue their important work, they must have clear and consistent mandates on their roles emanating from a single source." *All Writs Order*, 728 F.Supp. at 1047; *accord United States v. IBT ("Erbacci")*, 911 F.Supp. 743, 749 (S.D.N.Y. 1996)("For the IRB to function effectively, it is imperative that a single set of cohesive rulings defines such fundamental issues such as the scope of the Consent Decree and the propriety taken by officers appointed pursuant to the Consent Decree.").

More importantly, the IRB already addressed this matter and found that the IBT retains jurisdiction, interpreting the ninety-day rule to allow an extension of time for good cause. *See* Schilling Decl. at Ex. I. (citing Letter from John J. Cronin, Jr., IRB Administrator to Patrick J. Szymanski, General Counsel to the IBT, of 8/17/99).[1] Thus, allowing Slemko to litigate this jurisdictional issue in Canada would subject the Consent Decree and the IRB Rules to a potentially inconsistent judgment. *See All Writs Order*, 728 F.Supp. at 1047 ("Concentrating all Consent Decree related litigation in one forum allows uniform and congruous interpretations applying to all subordinate entities that seek to litigate disputes."). Moreover, any divergent decision that the Canadian court may render would encourage forum shopping of IBT members seeking a more lenient or sympathetic ruling in another jurisdiction. *See id.*

Second, the Slemko Action threatens to distract the Consent Decree officers from their reform efforts and burden them with the time and expense of defending litigation in another country. Here, the Slemko Action specifically names the IRB and the Election Officer, seeking monetary and equitable relief against them. This litigation, therefore, exposes the IRB and the Election Officer to civil liability for their actions taken pursuant to the Consent decree, burdens them with defending litigation in another country, and diverts their attention, time, and resources away from their on-going Consent Decree responsibilities. *See Erbacci*, 911 F.Supp. at 749 ("The travel and time required to defend [the Slemko Action in Canada] would hinder their ability to perform their respective functions under the Consent Decree."). This Court has emphasized that the Court Officers must be "free to attend to their momentous duties." *All Writs Order*, 728 F.Supp. at 1047.

Third, enjoining the Slemko Action would best fulfill the policies underlying judicial economy. "Because this Court has overseen the Consent Decree from its inception, this Court has a thorough knowledge of the myriad decisions that make up the law of this case, and this knowledge enables this Court to resolve disputes concerning the Consent decree efficiently." *Erbacci*, 911 F.Supp. at 749. The Canadian court is not as familiar with the Consent Decree, the IRB Rules, the Election Rules, or the intricate body of case-law comprised of the countless decisions of this Court and the Second Circuit governing this litigation. Thus, considering the knottiness of this litigation, hearing the instant case may present an arduous task for another court. This Court's extensive experience with the subject matter, however, would facilitate a more speedy resolution, fostering judicial economy.

Finally, this Court should enjoin the Slemko Action because it directly "chal-

---

1. The IRB cited a provision of the IBT Constitution, the Consent Decree, and the IRB Rules, providing that the IRB is the sole judge of whether a matter has not been pursued in a lawful, responsible, or timely manner. *See* IBT Const. art. XIX, § 14(c)(2); Consent Decree at ¶ (G)(f); IRB Rules at ¶ I(7). The IRB found that considering "the change in IBT administration and the difficulty in selecting a panel [to hear the proposed charges against Slemko]," the matter was pursued lawfully, responsibly, and timely and that good cause existed in the instant case, warranting an extension past the ninety days. Schilling Decl. at Ex. I.

lenge[s] 'the propriety of actions' taken pursuant to the consent decree." *IBT v. Teamsters Local Union 714,* 109 F.3d 846, 849 (2d Cir.1997); *see Erbacci,* 911 F.Supp. at 749. In his lawsuit, Slemko objects to the conduct of the Election Officer and the IRB in pursuing disciplinary action against him. If the Canadian court grants the relief requested in the Slemko Action, it would unnecessarily complicate the Election Officer's, the IRB's, and the IBT's efforts to pursue disciplinary measures against Slemko, a result that would subvert the Consent Decree's disciplinary processes. *See United States v. IBT ("Darrow"),* 896 F.Supp. 1339 (S.D.N.Y. 1995). Thus, this Court enjoins Slemko from continuing with the Slemko Action because it violates the All Writs Order.

## B. Personal Jurisdiction

"Under the All Writs Act, this Court has the power to enforce the Consent Decree ... against a non-party ... so long as this Court has jurisdiction over the non-party." *See United States v. IBT ("Labatt"),* 945 F.Supp. 609, 624 (S.D.N.Y.1996). Slemko is a member of the IBT, and as such, it is important to recognize that the Consent Decree binds all members and affiliates of the IBT, *see United States v. IBT ("Senese & Talerico"),* 941 F.2d 1292, 1297 (2d Cir. 1991) and, by its terms, the All Writs Act applies to "members" of the IBT. Furthermore, although Slemko is not a party to the Consent Decree, it is well established that "[i]njunctions may be issued against non-parties under the All Writs Act." *All Writs Order,* 907 F.2d at 281. Indeed, this Court has enforced the Consent Decree against third parties in Canada. *See Labatt,* 945 F.Supp. 609.

■ To establish personal jurisdiction, "the All Writs Act requires no more than that the persons enjoined have the 'minimum contacts' that are constitutionally required under due process." *All Writs Order,* 907 F.2d at 281. The minimum contacts standard is satisfied and a court may exercise jurisdiction over a foreign party "if at the time jurisdiction is asserted ... the person ... had carried on outside the state an activity having a substantial, direct, and foreseeable effect within the state, but only in respect to such activity." *Labatt,* 945 F.Supp. at 620.

■ This Court finds that Slemko's conduct in Canada has caused a substantial, direct, and foreseeable effect within the United States. First, Slemko's violations of the Election Rules interfered with the election process and the Consent Decree's goal of ensuring a fair, free, democratic, and informed election. The Election Officer found that Slemko violated the Election Rules by collecting, marking, and mailing ballots of other IBT members in the 1996 IBT rerun election. This Court has emphasized that the Election Rules "are the 'linchpin' in the ongoing effort to cleanse the IBT of the 'hideous influence of organized crime.'" *Id.* at 621 (quoting *Darrow,* 896 F.Supp. at 1354); *accord United States v. IBT ("1991 Election Rules Order"),* 742 F.Supp. 94, 97 (S.D.N.Y.1990) ("[N]o question is more central to the ultimate success of this Consent Decree than this proposed framework for the first fully democratic, secret ballot elections in the history of a union which has been the historic marionette of organized crime."). Thus, Slemko's prohibited actions interfered with the Election Rules' purpose of governing the IBT election throughout the United States and Canada, and, thereby, caused an effect within the United States by thwarting the Election Rules' ultimate goal of ridding the IBT of the influence of organized crime.

Second, Slemko's challenge to the IRB's and the IBT's authority to discipline him for his interference with the 1996 IBT rerun election impedes the disciplinary process set forth in the IRB Rules and the Consent Decree's objective of ridding the IBT of corruption and the gruesome influence of organized crime. Conduct that impedes or stymies the efforts of the Court Officers or threatens the purposes and goals of the Consent Decree will suf-

fice to confer personal jurisdiction. *See Labatt*, 945 F.Supp. at 620–23 (discussing conduct interfering with Election Officer's enforcement of Election Rules). Here, if the Canadian court grants Slemko's requested relief of an order enjoining the IRB and the IBT from pursuing disciplinary proceedings against him, it would prevent the IRB and the IBT from exercising their authority under the Consent Decree and the IRB Rules. Such a ruling would, in turn, interfere with this Court's exclusive authority, pursuant to the Consent Decree, to oversee the operations of the IRB. Thus, Slemko's lawsuit causes an effect within the United States because it seeks to subvert the disciplinary processes and the underlying objectives of the Consent decree.

### Conclusion

For all the foregoing reasons, this Court finds that Slemko has violated the All Writs Order and that it is entirely consistent with the notions of fair play and justice for this Court to exercise its jurisdiction over Slemko to order his immediate compliance with the All Writs Order. This Court also finds Slemko in default because he has neither timely nor adequately responded to the Government's motion.

IT IS HEREBY ORDERED that pursuant to the *All Writs Order*, the All Writs Act, 28 U.S.C. § 1651, and this Court's inherent equity powers, Slemko is enjoined from further pursuing the Slemko Action, presently pending in the Court of Queens Bench of Alberta, Judicial District of Calgary, in any court or forum in any jurisdiction except this Court.

IT IS FURTHER ORDERED that Slemko is to withdraw the Slemko action within ten days of this order.